IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| RACHELL R. FLORES, | Cause No. CV 24-75-H-DWM |
| Plaintiff, | |
| vs. | ORDER |
| R.N. COLE, ET AL., | |
| Defendants. | |

Defendants R.N. Cole Brilz and R.N. Taylor Schraunder ("County Defendants") moved for summary judgment on Plaintiff Rachell R. Flores' Amended Complaint. (Docs. 40 – 47.) After a delay, Flores responded. (Docs. 52 and 53.) The motion is granted.

## I.    BACKGROUND

In short, Plaintiff Rachell Flores was detained at Lewis and Clark County Detention Center in Helena, Montana, in 2024, on revocation of her probation. (Doc. 15 at 5.) In her Amended Complaint, Flores alleges she suffers from reactive hypoglycemia, which causes critically low blood glucose levels. (Doc. 15-1 at 3.) Flores alleges that she requested glucose testing at the detention center and was denied by County Defendants. Flores alleges she suffered seizures as a result of hypoglycemia while detained. She construes her treatment by the County Defendants as an unconstitutional denial of medical care.

1

Flores named a third defendant in her lawsuit, R.N. Paula, who was employed at Passages, the placement Flores went to after Lewis and Clark County Detention. (Doc. 27 at 2.) Defendant Paula has never been served with this lawsuit. (Doc. 39.) Flores is proceeding in forma pauperis, and thus, the Court had the responsibility of having the Complaint properly served upon defendants. *See Puett v. Blandford*, 912 F.2d 270, 275 (9th Cir. 1990); *Penton v. Pool*, 724 Fed. Appx. 546 (9th Cir. 2018). However, a plaintiff proceeding in forma pauperis still must provide accurate and sufficient information to effect service. *Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir. 1994) (*overruled on other grounds Sandin v. Conner*, 515 U.S. 472, 483-84 (1995)). Defendant Paula did not waive service of the Complaint when it was mailed to the address provided by Flores. (Doc. 18.) Flores was directed to provide sufficient information for service, but she again provided the original information that was not accurate. (Doc. 51.) Accordingly, Flores' claims against Paula were not properly served and are dismissed without prejudice. Fed. R. Civ. P. 4(m).

## II.   ANALYSIS

### A. Standard for Summary Judgment

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial

responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputed facts that do not change the Court's analysis under the law may be disregarded.

Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Id.* at 324. In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

**B. Discussion**

County Defendants assert three arguments in their motion: Defendants treated Flores's known medical conditions appropriately, Flores's desire to administer her own medication and testing is not a clearly established

constitutional right, thus giving rise to qualified immunity for Defendants, and Flores failed to exhaust her administrative remedies, as required by the Prison Litigation Reform Act. (Doc. 41 at 10 – 11.)

As an initial matter, Plaintiff Flores did not file her Statement of Disputed Facts, as required by L.R. 56.1(b). She was reminded of her obligations under the rule by the defendants' *Rand* notice. (Doc. 46.) It is not the Court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). Flores, even though self-represented, has the obligation to lay out the support for her position as clearly as she can. *Carmen v. S.F. Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). The Court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." *Id.* In addition, Flores' "Evidence" is a collection of documents, some already provided through the affidavits of Defendants, some not, that cannot be considered a substitute for a structured Statement of Disputed Facts compliant with the Local Rule.

1. Administrative Exhaustion

County Defendants' third argument will be addressed first, because it is dispositive. (Doc. 41 at 25 – 41.) Flores failed to exhaust her administrative remedies, and thus, her suit is barred by the Prison Litigation Reform Act.

4

The Prison Litigation Reform Act's exhaustion requirement states:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 93 - 97 (2006).

Defendants bear the burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014).

Under the Prison Litigation Reform Act, prison regulations define the exhaustion requirements. County Defendants have provided a copy of the relevant grievance procedure available to inmates. (Doc. 43-8.) This procedure was also available to Flores on the electronic kiosks by which she filed her various grievances. (Doc. 43 at 4 – 5.) The policy explains that there are three rounds of

appeal that follow a decision with which "the resident is not satisfied[.]" (Doc. 43-8 at 1.) The policy reminds an inmate that she must "exhaust all remedies provided by the procedure before seeking judicial action." *Id.* The facility has a different method for requesting medical attention, which is by "sending a detailed medical request through the KIOSK system…" (Doc. 43-9.) As a practical matter, these different types of requests appear in the same format, but there is a line for "Type" that identifies whether the communication is, for example, a Medical Request, a General Request, a Programs Request, or a Grievance or Grievance Appeal.

County Defendants filed Flores' extensive grievance file from her stay at Lewis and Clark County Detention from February 7 to June 18, 2024. (Doc. 43-5.) Flores' first grievance dates to February 10, 2024, when she was asking for a medical appointment. (Doc. 43-5 at 117.) Her final grievance before her departure is dated June 5, 2024, when she asked for her release date. (Doc. 43-5 at 1.) This file shows that Flores was able to use the appeal system when she chose to. For example, Flores was not satisfied with the response she received to her grievance of May 25, 2024, regarding grievances responses. (Doc. 43-5 at 19 – 21.) Flores took advantage of two rounds of appeal, the lieutenant and sergeant rounds, until she, apparently, left the facility before the issue was resolved. Defendants have established that Flores was aware of the appeals procedure and knew how to use it.

Accordingly, the relevant inquiry is whether Flores properly sought medical

attention for her hypoglycemia, and, if she did and was not satisfied with the response, whether she grieved the denial.[1] Flores' grievance and medical request file shows four occasions on which her blood sugar was mentioned. (Doc. 43-5 at 64, 66, 84, and 117.) Each of these mentions in labelled as a "Medical Request," and not a grievance. Flores' first mention is right after her arrival, when she seeks an appointment for an iron infusion, in which she mentions she is "prescribed protein drinks," to help with her blood sugar. (Doc. 43-5 at 117.) She does not explicitly seek treatment for her hypoglycemia in this request. Flores' next request, dated April 22, 2024, is lengthier and discusses several issues. Flores requests nutritional supplements and her emergency glucose pen to assist in stabilizing her sugars, and to be on a blood sugar testing schedule. (Doc. 43-5 at 84.) The last two requests that mention her blood sugar relate to her requests to have an emergency glucose pen nearby. Flores had a low blood sugar episode on May 4, 2024, and made a request for her pen that she asserted had been prescribed to her. (Doc. 43-5 at 66.) In response to these two requests filed on the same evening, Defendant Taylor asked Flores to send another kite if she was still having the issue. Flores did not do so. (Doc. 43-5 at 66.)

These various medical requests spanned the time in which Flores was in

---

[1] As explained above, Flores' Amended Complaint includes medical care claims related to her time at Passages, after her release from Lewis and Clark County. (Doc. 27 at 11.) Those facts and claims are disregarded.

7

Lewis and Clark County Detention Center. However, she never moved from a medical request to a grievance, and never pursued any kind of administrative remedy to obtain care that she was not receiving. Flores received no immediate response to her request of April 22, 2024, but she did not grieve the lack of response or do anything to follow up on her requests.

Flores did not respond to this issue in her response brief. Nor did she deny, in response to County Defendants' request for admissions, that she had failed to exhaust her administrative remedies. (Doc. 45-1 at 7.) Flores failed to exhaust her administrative remedies, and on that ground alone, County Defendants are entitled to summary judgment.

2. Medical Care

Even if Flores had exhausted her administrative remedies, she has not established that she received constitutionally deficient medical care at Lewis and Clark County.

Flores was a convicted inmate during the time she spent at Lewis and Clark County, and thus, her right to medical care arose under the Eighth Amendment. Incarcerated individuals have an Eighth Amendment right to adequate medical treatment. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). "[T]o maintain an Eighth Amendment claim based on inadequate medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d

1091, 1096 (9th Cir. 2006) (quoting *Estelle*, 429 U.S. at 104). This two-pronged test consists of an objective and subjective element. *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014). The first prong, serious medical need, is objectively shown by demonstrating that "failure to treat the injury . . . could result in further significant injury or cause the unnecessary and wanton infliction of pain." *Id.* (internal quotation marks omitted). The second prong, deliberate indifference, involves a subjective assessment of whether a defendant "knows of and disregards an excessive risk to inmate health or safety." *Id.* (internal quotation marks omitted). "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [...] must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1970).

Defendants' "requisite knowledge of substantial risk is a question of fact subject to demonstration in the usual ways, [which include] inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. *See also Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 668 (9th Cir. 2021) ("[A] prison official who should have been aware of a medically related risk to an inmate, but in fact was not, has not violated the Eighth Amendment, no matter how severe the risk.") (internal quotation marks omitted); *see also Farmer*, 511 U.S. at 844 (prison official may show they were unaware of a substantial risk

9

by proving "that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent.").

Defendants contend they are not liable under this standard, because they administered constitutionally-sufficient medical care. (Doc. 41 at 14.) They also assert that Flores has alleged only medical malpractice in her Amended Complaint, and not a constitutional claim.

As a preliminary matter, Defendants are correct that medical malpractice is not sufficient to state a constitutional claim. *See Estelle*, 429 U.S. at 106. ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). "Even medical malpractice by itself would be insufficient to establish a constitutional violation." *Simmons v. G. Arnett*, 47 F.4th 927, 933–34 (9th Cir. 2022) (internal citations and quotations omitted). But Flores also alleged, in her Amend Complaint, that her claims arise under the 5th, 8th, and 14th Amendments. (Doc. 27 at 3.) Pro se filings must be liberally construed. Accordingly, her medical care claims will be assessed under the applicable constitutional standard, the Eighth Amendment.

As to the care Flores received, County Defendants have provided medical records that predate Flores' time at the jail, and from Flores' various appointments

both within the jail, and with outside providers during her time there.[2] (Doc. 43-1 and 43-3.) The notes show that Flores had several appointments and tests, including glucose tests. (Doc. 43-1 at 38.) Flores' booking questionnaire does not mention any prescriptions related to hypoglycemia, nor does it mention hypoglycemia as a medical problem. (Docs. 43-2 and 43-1 at 39.)  Flores saw outside providers while in the detention center and did not discuss issues related to her blood sugars. (Doc. 43-1 at 39 – 40.) She did, however, have a urine panel that included a glucose test, the result of which was negative for any issues. (Doc. 43-1 at 40.)

As for medical care within the facility, the first note regarding Flores' medical care was upon her arrival, when she was booked with some medications and an inhaler. None of these medications relate to her blood sugar, nor does this list include a glucose pen or glucose tablets. (Doc. 43-3 at 8.) The next two notes explain that Flores was informed that the detention center needs her to file a release of her medical information for her records before an outside appointment can be scheduled. Flores did not return the release, thus preventing scheduling of the appointment. (Doc. 43-3 at 9 and 10.)

Flores was seen in the clinic on March 12, 2024, for hip pain and

---

[2] Flores' medical records include records from when she detained at Lewis and Clark County prior to the period at issue in her Complaint.

miscellaneous other issues. (Doc. 43-3 at 12.) No notes were made related to glucose levels. On March 24, 2024, Flores had an episode of low blood sugar. She was given three glucose tabs. (Doc. 43-4.) There is no evidence in the medical records or in Flores' grievance file that the named defendants were aware of this episode. A month later, Flores had a visit with her outside provider, and again, her blood levels were normal, and hypoglycemia was not mentioned. On May 4, 2024, Flores claimed to have a seizure due to low blood sugar levels. She was able to eat something to stabilize. (Doc. 43-5 at 66.) She filed two medical care requests the same evening, but then nothing further prior to her departure from the facility. (Doc. 43-5 at 64 – 67.)

In the context of this medical history and incidents at Lewis and Clark County, County Defendants conclude that Flores received adequate medical care. (Doc. 41 at 14.) Flores' response does not rebut this assertion. She discusses various irrelevant occurrences, including, in depth, events prior to the time period addressed by her Complaint. (Doc. 52 at 2 – 4.) As to her time at Lewis and Clark County, aside from reiterating her allegations that she had a critical medical need, she does not provide any facts to support her assertion that Defendants were deliberately indifferent to her need. She sought various sorts of medical care while at Lewis and Clark and received the attention she requested. She never raised hypoglycemia with any of the providers she saw. She did not receive a glucose

pen, because she did not provide sufficient documentation to show that she had a prescription for one. Nor did she request one when she had any of her visits with outside providers.

Flores did have two apparent episodes of low blood sugar. One time she was immediately treated with glucose tablets by staff. (Docs. 43-4 and 43-5.) The second time, she navigated the episode herself. This second episode was caught on video, a copy of which was filed by County Defendants. (Doc. 47[3].) What exactly happened is difficult to discern, because the camera did not have a clear view of Flores. She was sleeping for a long time, then rubbed her face and sat up. A detention officer who had entered the pod speaks to her for a few moments and then carries on with his activities. In Flores medical request related to this episode, she states that she had a seizure and was unable to ask for assistance at this time, but she also states she was able to eat a sandwich and regulate her blood sugar. (Doc. 43-5 at 66.) The video is not decisive. Flores may have had a seizure, but that is not obvious in the video. She alleges she was not able to articulate that to the officer who spoke with her, but there is nothing about his demeanor or actions in the video that suggests he thought his exchange with her was anything other than normal. And that officer was not named as a defendant, so even if he had

---

[3] County Defendants refer to the timestamps on this video in their Statement of Undisputed Facts, but their times appear incorrect. Their description of the captured events, however, is accurate.

13

some knowledge about her condition, that knowledge is not attributable to County Defendants.

After this episode, Flores asked again for a glucose pen, but then her grievance requests then turned to various other topics. Her low blood sugar is not discussed again, prior to her departure from Lewis and Clark County Detention. Flores has failed to establish there is a genuine issue of material fact that prevents summary judgment, because she has not established that she had a serious medical need to which County Defendants were deliberately indifferent. Nothing in the record shows that County Defendants were aware of Flores having a serious medical need regarding hypoglycemia. Therefore, they could not have been deliberately indifferent to that need.

## III.  CONCLUSION

Plaintiff Flores has failed to demonstrate that there is a genuine issue of material fact that prevents summary judgment as to whether County Defendants provided constitutionally adequate medical care at Lewis and Clark County Detention Center. County Defendants' motion is granted.

Accordingly, it is HEREBY ORDERED:

1. Defendant's motion for summary judgment is **GRANTED**. (Doc. 42.) All other pending motions are **DENIED** as moot. The Clerk of Court is directed to close this matter and enter judgment, pursuant to Fed. R. Civ. P. 58.

14

2.  The Clerk of Court is directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.

DATED this 2nd day of March, 2026.

14:07 P.M.

Donald W. Molloy, District Judge
United States District Court

15